UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>   v.<br><br>PETER T. SANTILLI, JR.<br><br>               Defendant. | Case No. 2:16-cr-00046-GMN-PAL<br><br>**REPORT OF FINDINGS AND RECOMMENDATION**<br><br>(Mot. Dismiss – ECF No. 703) |

Before the court is Defendant Peter T. Santilli, Jr.'s ("Santilli") Motion to Dismiss Indictment as His Conduct is Constitutionally Protected (ECF No. 703), which was referred for a Report of Findings of Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB1-4 of the Local Rules of Practice. The court has considered the Motion, the Government's Response (ECF No. 922), and Santilli's Reply (ECF No. 947).

## BACKGROUND

### I.     The Indictment

Defendant Santilli and 18 co-defendants are charged in a Superseding Indictment (ECF No. 27) returned March 2, 2016. Santilli is charged in 16 counts with:

- Count One – Conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371. This charge arises from conduct that allegedly occurred sometime between March of 2014 and March 2, 2016.
- Count Two – Conspiracy to impede or injure a federal officer in violation of 18 U.S.C. § 372. This charge arises from conduct that allegedly occurred sometime between March of 2014 and March 2, 2016.
- Count Three – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2. This charge arises from conduct that allegedly occurred sometime between March of 2014 and March 2, 2016.
- Count Four – Assault on a federal officer in violation of 18 U.S.C. § 111(a)(1), (b) and § 2. This charge arises from conduct that allegedly occurred on April 9, 2014.

1

- Count Five – Assault on a federal officer in violation of 18 U.S.C. § 111(a)(1), (b) and § 2. This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Six – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Seven – Threatening a federal law enforcement officer, in violation of 18 U.S.C. § 115(a)(1)(B) and § 2.  This charge arises from conduct that allegedly occurred on April 11, 2014.

- Count Eight – Threatening a federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Nine – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Ten – Obstruction of the due administration of justice in violation of 18 U.S.C. § 1503 and § 2.  This charge arises from conduct that allegedly occurred on April 6, 2014.

- Count Eleven – Obstruction of the due administration of justice in violation of 18 U.S.C. § 1503 and § 2.  This charge arises from conduct that allegedly occurred on April 9, 2014.

- Count Twelve – Obstruction of the due administration of justice in violation of 18 U.S.C. § 1503 and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Thirteen – Interference with interstate commerce by extortion in violation of 18 U.S.C. § 1951 and § 2.  This charge arises from conduct that allegedly occurred between April 2, 2014, and April 9, 2014.

- Count Fourteen – Interference with interstate commerce by extortion in violation of 18 U.S.C. § 1951 and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Fifteen – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Sixteen – Interstate travel in aid of extortion in violation of 18 U.S.C. § 1952 and § 2.  This charge arises from conduct that allegedly occurred sometime between April 5, 2014 and April 12, 2016.

The Superseding Indictment (ECF No. 27) in this case arises out of a series of events related to a Bureau of Land Management ("BLM") impoundment of Cliven Bundy's cattle following a two-decade-long battle with the federal government.  Beginning in 1993, Cliven Bundy continued to graze cattle on land commonly referred to as the "Bunkerville Allotment" without paying required grazing fees or obtaining required permits.  The United States initiated civil litigation against Cliven Bundy in 1998 in the United States District Court for the District of Nevada.  The court found that Cliven Bundy had engaged in unauthorized and unlawful grazing

of his livestock on property owned by the United States and administered by the Department of the Interior through the BLM.  The court permanently enjoined Cliven Bundy from grazing his livestock on the Allotment, ordered him to remove them, and authorized the BLM to impound any unauthorized cattle.  Bundy did not remove his cattle or comply with the court's order and injunction. The United States went back to court.  Subsequent orders were entered in 1999 and 2013 by different judges in this district permanently enjoining Bundy from trespassing on the Allotment and land administered by the Nevada Park Service ("NPS") in the Lake Mead National Recreation Area[1], ordering Bundy to remove his cattle, and explicitly authorizing the United States to seize, remove, and impound any of Bundy's cattle for future trespasses, provided that written notice was given to Bundy.

On February 17, 2014, the BLM entered into a contract with a civilian contractor in Utah to round up and gather Bundy's trespass cattle.  BLM developed an impoundment plan to establish a base of operations on public lands near Bunkerville, Nevada, about 7 miles from the Bundy ranch in an area commonly referred to as the Toquop Wash.  On March 20, 2014, BLM also entered into a contract with an auctioneer in Utah who was to sell impounded cattle at a public sale.  Bundy was formally notified that impoundment operations would take place on March 14, 2014.  The following day, Bundy allegedly threatened to interfere with the impoundment operation by stating publicly that he was "ready to do battle" with the BLM, and would "do whatever it takes" to protect "his property."  The superseding indictment alleges that after being notified that BLM intended to impound his cattle, Bundy began to threaten to interfere with the impoundment operation, and made public statements he intended to organize people to come to Nevada in a "range war" with BLM and would do whatever it took to protect his cattle and property.

The superseding indictment alleges that, beginning in March 2014, the 19 defendants charged in this case planned, organized, conspired, led and/or participated as followers and gunmen in a massive armed assault against federal law enforcement officers to threaten, intimidate, and extort the officers into abandoning approximately 400 head of cattle owned by Cliven Bundy.

---

[1] By 2012, Bundy's cattle had multiplied and he also began grazing his cattle on land administered by the NPS in the Lake Mead National Recreation Area without obtaining grazing permits or paying grazing fees.

The removal and impoundment operation began on April 5, 2014. On April 12, 2014, defendants and hundreds of recruited "followers" executed a plan to recover the cattle by force, threats, and intimidation. Defendants and their followers demanded that officers leave and abandon the cattle and threatened to use force if the officers did not do so. The superseding indictment alleges armed gunmen took sniper positions behind concrete barriers and aimed their assault rifles at the officers. Defendants and their followers outnumbered the officers by more than 4 to 1, and the potential firefight posed a threat to the lives of the officers, as well as unarmed bystanders which included children. Thus, the officers were forced to leave and abandon the impounded cattle.

After the April 12, 2014 confrontation with federal officers, the superseding indictment alleges that the leaders and organizers of the conspiracy organized armed security patrols and check points in and around Cliven Bundy's Bunkerville ranch to deter and prevent any future law enforcement actions against Bundy or his co-conspirators, and to protect Bundy's cattle from future law enforcement actions.

## II.    Procedural History

An Indictment (ECF No. 5) was returned February 17, 2016, charging Santilli and co-defendants Ryan Bundy, Ammon Bundy, Ryan Payne, and Cliven Bundy with 16 felony counts. Santilli was arrested March 30, 2016, on a Superseding Indictment (ECF No. 27) returned March 2, 2016, and a warrant issued in this district. All 19 defendants made their appearances in this case in this district between March 4, 2016, and April 15, 2016. At the initial appearance of each defendant, the government stated its position that this was a complex case that would require special scheduling review. All 19 defendants are currently joined for trial pursuant to the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 ("STA"). All 19 defendants have been detained pending trial.

In an Order (ECF No. 198) entered March 25, 2016, the court directed the parties to meet and confer as required by LCR 16-1 to discuss whether this case should be designated as complex, and, if so, to attempt to arrive at an agreed-upon complex scheduling order addressing five specified topics for discussion. The order gave the parties until April 18, 2016, to file a stipulated proposed complex case schedule if all parties were able to agree, or if they were not, to file a proposed schedule with supporting points and authorities stating each party's position with respect

to whether or not the case should be designated as complex, a proposed schedule for discovery, pretrial motions, and trial, and any exclusions of time deemed appropriate under 18 U.S.C. § 3161.

A Proposed Complex Case Schedule (ECF No. 270) was filed on April 18, 2016.  In it, the government and 13 of the 19 defendants agreed that the case should be designated as complex. The 13 defendants who stipulated to the proposed schedule included: Cliven Bundy, Mel Bundy, Dave Bundy, Blaine Cooper, Gerald Delemus, O. Scott Drexler, Richard Lovelien, Steven Stewart, Todd Engel, Gregory Burleson, Joseph O'Shaughnessy, Micah McGuire and Jason Woods.  Three defendants, Ammon Bundy, Peter Santilli, and Brian Cavalier, indicated that they would "defer the decision to agree or disagree, pending further consultation with counsel and/or have taken no position as to the filing of this pleading."  Three defendants, Ryan Bundy, Eric Parker, and Ryan Payne, disagreed that the case should be designated as a complex case "to the extent time is excluded under the STA."

The same 13 defendants who initially stipulated that the case should be designated as complex, agreed that the May 2, 2016 trial date should be vacated, and that the trial in this matter should be set on the first available trial track beginning "in or around February 2017."  Three defendants, Ammon Bundy, Peter Santilli, and Brian Cavalier, "deferred the decision to agree or disagree about a trial date pending further consultation with counsel, or have not taken a position."

The 13 defendants who stipulated the case should be designated as complex and a trial date set in February 2017, stipulated "that all time from the entry of Defendants' pleas in this case until the trial of this matter is excluded for purposes of the STA pursuant to 18 U.S.C. § 3161(h)(7)(A) as the ends of justice outweigh the interest of the public and the defendants in a speedy trial." Ammon Bundy, Peter Santilli and Brian Cavalier "deferred the decision to agree or disagree about the exclusion of time, pending further consultation with counsel, or have taken no position on the matter."  Ryan Bundy stated he disagreed "to the extent any exclusion of time denies him the right to a speedy trial under the STA."  Eric Parker stated he disagreed "with no further position stated." Ryan Payne stated he disagreed "with the exclusion of time to the extent it denies him the right to a speedy trial under the STA."

/ / /

The court held a scheduling and case management conference on April 22, 2016, to determine whether this case should be designated as complex.  Eighteen of the nineteen defendants appeared with their counsel.  Defendant Ryan Bundy appeared pro se with standby counsel, Angela Dows.  At the scheduling and case management conference on April 22, 2016, many of the defendants who had initially stipulated to the complex case schedule and a February 2017 trial date, changed positions.  The positions of each of the defendants were stated on the record at the hearing and memorialized in the court's Case Management Order (ECF No. 321) entered April 26, 2016.  The court found the case was a complex case within the meaning of 18 U.S.C. § 3161(h)(7)(B)(ii), and set the trial for February 6, 2017.  The case management order made findings concerning why this case was deemed complex within the meaning of 18 U.S.C. § 3161(h)(7)(B), and the court's findings on exclusion of time for purposes of the Speedy Trial Act.  The case management order also set deadlines for filing motions to sever, motions for filing pretrial motions and notices required by Rule 12 of the Federal Rules of Criminal Procedure[2] and LR 12(1)(b).  No defendant filed objections to the determination that this case was complex, the court's Speedy Trial Act tolling and exclusion findings, or any other provision of the court's case management order.

### III.   The Parties' Positions

#### A.   The Motion to Dismiss

Santilli seeks an order dismissing the indictment arguing his conduct, as outlined in ¶¶ 61–62 of the indictment is Constitutionally protected.  These paragraphs allege that Santilli's interview of Cliven Bundy on the Pete Santilli show on April 8, 2004, constitute threats.  The interview took place on Santilli's regular broadcast in which Cliven Bundy called in to air his grievances about the manner in which the BLM was treating him and his cattle.  There were no requests for unlawful conduct or request for violence or unlawful activity.  Santilli was sitting in California when he took the phone call during his radio show and when he called for an open carry protest on private property at the Bundy ranch in support of his radio guest.  This is advocacy speech and lawfully protected speech.  He argues his "call for people to stand up and protest with legally possessed

---

[2]  All references to a "Rule" or "Rules" in this Order refer to the Federal Rules of Criminal Procedure.

1   firearms is Constitutional speech."

2       Santilli also argues that: the conduct alleged in ¶ 69 concerning his meeting with BLM

3   agents to discuss media issues; the indictment allegations in ¶¶ 73–74 which involve roadside

4   protests of heavy equipment to capture cattle on April 9, 201; the allegations in ¶¶ 75–76 that

5   involve broadcasting events of the roadside event; the allegations in ¶¶ 77–78 in which he allegedly

6   called for 10,000 protestors to assemble at the Bundy ranch; and the allegations in ¶ 79 which

7   alleges that Santilli recorded a conversation with the Special Agent in Charge on April 11, 2014,

8   all constitute protected speech.

9       The motion cites the Supreme Court and the Ninth Circuit's decisions in *Brandenburg v.*

10  *Ohio*, 395 U.S. 444 (1969), *Planned Parenthood of Columbia/Willamett, Inc. v. Am. Coal. of Life*

11  *Activists*, 290 F.3d 1058 (9th Cir. 2002) (en banc), and *Watts v. United States*, 394 U.S. 705 (1969),

12  in support of his arguments that allegations in the superseding indictment do not constitute a "true

13  threat" and his speech is protected under the First Amendment.  Santilli argues that none of his

14  statements identified by the government in the superseding indictment constitute true threats, and

15  as such were expression protected by the First Amendment.  He believes it is "telling" that until

16  hearings concerning his detention or pretrial release, the government made no issue of his

17  statements, or indicated they believed his statements constituted a true threat to federal officers.

18      Santilli was also charged in the Oregon prosecution.  The government eventually analyzed

19  the speech and came to the determination through consultations with the Justice Department that

20  Santilli's coverage of the refuge standoff was protected speech and moved for dismissal.  He seeks

21  an evidentiary hearing in this case to allow prosecutors to "identify and 'discovery' [*sic*] that

22  Santilli's conduct mirrors Oregon and dismiss this case on their own accord."

23      Finally, the motion argues that the statements attributed to him do not identify or target any

24  specific individual and were not disseminated any way that would indicate any individual was

25  being singled out.  The statements the government points to justifying charges against Santilli were

26  not serious expressions of an intent to do harm to government officers, and therefore not "true

27  threats" but political speech protected by the First Amendment.  He argues he should not have to

28  suffer adverse consequences at the hands of the government for exercising his free speech rights,

and therefore requests that the court dismiss the indictment.

### B.  The Government's Response

The government opposes the motion arguing that the sufficiency of an indictment under Rule 12 is governed by Rule 7(c)(1), which requires that an indictment must be a plain, concise, and definite written statement of the essential facts constituting the offense charged.  Additionally, the rule requires that for each count, the charging document must give the official or customary citation of the statute, rule, or other provision of law that is alleged to have been violated.

The indictment states an offense where the charging language contains the elements of the offense charged, fairly informs the defendant of the charge against which he must defend, and enables him to plead an acquittal or conviction in a bar of future prosecutions for the same offense. These two requirements can be met when the indictment does nothing more than track the words of the statute charged in the offense as long as the words unambiguously set forth all of the elements necessary to constitute the offense.  In reviewing the indictment for sufficiency under Rule 12, the court is bound by the four corners of the indictment and must accept the facts alleged in the indictment as true.  Applying these principles forecloses Santilli's claim that Rule 12 mandates dismissal because he was supposedly engaged in speech protected by the First Amendment.

The government disputes that an evidentiary hearing is required so the court can hear evidence to determine the context of his speech, and whether or not it is protected under the First Amendment.  Rule 12 does not allow for a pretrial evidentiary hearing.

On the merits, the government argues that Santilli's First Amendment claims do not afford him a "safe harbor from criminal prosecution."  Citing *Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1983), the government argues that the First Amendment has never protected or recognized force and violence as a form of speech.  Nor has the Fourth Amendment ever shielded speech used to aid and abet the commission of a crime or to advance the objectives of the criminal conspiracy, even where a defendant used only words to carry out these illegal purposes.

The government argues that Santilli's reliance on *Brandenburg v. Ohio* is misplaced. There, the Supreme Court struck down as unconstitutional an Ohio statute that made it unlawful

to advocate "the duty, necessity, or propriety of crime, violence, or unlawful methods of terrorism as a means of accomplishing industrial or political reform."  The court held that abstract teaching of the moral piety or even the moral necessity for a resort to force or violence is not the same as preparing a group for violent action.  In this case, Santilli is not charged with advocating violence, but with producing it, and is therefore charged with conspiracy, extortion, assault, and obstruction of justice.  The government argues that each of Santilli's recruiting messages to militia groups and others is charged as an overt act in the conspiracy, and that his messages were intended to advance its criminal objectives.  The First Amendment does not afford First Amendment speech protection to words where there is a criminal purpose and intent behind the words.  Moreover, the government claims it is irrelevant whether Santilli's messaging was meant for specific individuals, or as he contends, for mass dissemination.  The indictment alleges his messaging was done for the illegal purpose of advancing a criminal conspiracy, thus the size or makeup of his audience is irrelevant.

Finally, the government argues that Santilli's factual arguments about whether certain statements were "true threats" or "conditional" are factual determinations appropriate for the jury to consider and not the proper subject of a Rule 12 motion.  The government therefore asks that the court deny the motion.

**C.  Santlli's Reply**

Santilli replies that the *Watts* case is controlling and requires dismissal of the indictment. The statements the court found protected in *Watts* are similar to the statements Santilli made charged in the indictment which are political statements regarding land issues that he came to Nevada to cover as a journalist for his radio show.  This type of political speech is protected and Santilli should be able to present his speech before the court "in the context with the events that transpired as we now know through the evidence turned over to the government in recent months." He therefore reiterates his request for an evidentiary hearing to present evidence regarding the context in which the speech was spoken and/or broadcasted to viewers nationwide.

/ / /

/ / /

/ / /

# DISCUSSION

## I.      Rule 12

Pursuant to Rule 12, a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).  Rule 12(b)(3) specifies the motions which must be made before trial.  Among them is a motion to dismiss for failure to state an offense.  Fed. R. Crim. P. 12(b)(3)(v).  A pretrial motion to dismiss a criminal case is appropriate when it involves questions of law rather than fact.  *United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987).

In ruling on a pretrial motion to dismiss, "the district court is bound by the four corners of the indictment." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) ("On a motion to dismiss an indictment for failure to state an offense the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged.").  The court should not consider evidence that does not appear on the face of the indictment.  *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)).  Thus, a defendant is not entitled to a pre-trial evidentiary hearing to obtain a preview of the government's evidence and an opportunity to cross-examine its witnesses.  *Id.* at 669 ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence.").

In determining whether a cognizable offense has been charged, the court does not consider whether the government can *prove* its case, only whether accepting the facts as alleged in the indictment as true, a crime has been alleged.  *United States v. Milovanovic*, 678 F.3d 713, 717 (9th Cir. 2012).  Rule 12 motions cannot be used to determine "general issues of guilt or innocence," which "helps ensure that the respective provinces of the judge and jury are respected." *Boren*, 278 F.3d at 914 (citation omitted).  A defendant may not challenge a facially-sufficient indictment on the ground that the allegations are not supported by adequate evidence.  *Jensen*, 93 F.3d at 669 (citation omitted).  However, the court may dismiss an indictment if "it fails to recite an essential element of the charged offense." *United States v. Ezeta*, 752 F.3d 1182, 1184 (9th Cir. 2014) (citing *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005)).

/ / /

## II.    Sufficiency of an Indictment

"An indictment 'must be a plain, concise and definite written statement of the essential facts constituting the offense charged'." *United States v. Forrester*, 616 F.3d 929, 940 (9th Cir. 2010) (quoting Fed. R. Crim. P. 7(c)(1)).  An indictment is "sufficient if it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

An indictment is generally sufficient if it sets forth the offense in the words of the statute itself as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all of the elements necessary to constitute the offenses intended to be punished." *Hamling*, 418 U.S. at 117.  The test of an indictment's sufficiency "is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Livingston*, 725 F.3d 1141, 1146–47 (9th Cir. 2013) (citation omitted).  The Ninth Circuit has held:

> An indictment will withstand a motion to dismiss "if it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge."

*United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994) (quoting *United States v. Bernhardt*, 840 F.2d 1441, 1445 (9th Cir. 1988)).  The sufficiency of an indictment is determined by "whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the government can prove its case." *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993) (quoting *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982)).  The court will look at the indictment "as a whole, include facts which are necessarily implied, and construe it according to common sense." *United States v. Kaplan*, 836 F.3d 1199, 1216 (9th Cir. 2016) (citing *Buckley*, 689 F.2d at 899).

/ / /

11

### III.    Santilli's Amendment Arguments

In general, the First Amendment prohibits the government from restricting expression because of its message, ideas, subject matter, or content.  *United States v. Alvarez*, --- U.S. ----, 132 S. Ct. 2537, 2543 (2012) (citing *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002)).  Content-based restrictions on speech are presumed invalid, and the government bears the burden of showing they are constitutional.  *Id.* at 2544.  However, the government may restrict some speech without violating the First Amendment.  *Id.* at 2547.  From 1791 to the present, the Supreme Court has upheld content-based restrictions on speech based on an ad hoc balancing of relative social costs and benefits in a limited number of situations.  *Id.* at 2537.  Content-based restrictions on speech have been permitted for a few "historic and traditional categories of expression," including: incitement to imminent lawless actions, obscenity, defamation, so-called "fighting words," true threats, child pornography, fraud, speech integral to criminal conduct, and speech presenting some grave and imminent threat the government has the power to prevent.  *Id.* at 2544 (collecting cases) (internal punctuation and citation omitted).

It is well established that the First Amendment does not prohibit the government from criminalizing speech that is integral to criminal conduct.  *Osinger*, 753 F.3d at 946 (citation omitted).  "The right to speak is not unlimited," and the degree of scrutiny courts apply to "challenged speech varies depending on the circumstances and the type of speech at issue." *United States v. Szabo*, 760 F.3d 997, 1001–02 (9th Cir. 2014) (internal citation omitted).  The Supreme Court has repeatedly held that any expressive aspects of a defendant's speech are not protected under the First Amendment when they are "integral to criminal conduct."  *Osinger*, 753 F.3d at 947; *see also Gibony v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949) (speech and writing "used as an integral part of conduct in violation of a valid criminal statute" is not protected by the First Amendment) (citing *Fox v. Washington*, 236 U.S. 273, 277 (1915); *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942)).  For example, speech used to commit blackmail and extortion, such as threats that the speaker will say or do something unpleasant unless the victim takes, or refrains from taking, certain action, is not constitutionally protected.  *See, e.g.*, *Planned Parenthood*, 244 U.S. 1007, 1015 n.8 (9th Cir. 2001) (citing *Watts*, 394 U.S. 705), *aff'd in part,*

1    *rev'd in part on other grounds on r'hg en banc*, 290 F.3d 1058 (9th Cir. 2002).

2    　　　　Speech that "threatens a person with violence is not protected by the First Amendment."

3    *Szabo*, 760 F.3d at 1002 (citing *Planned Parenthood*, 290 F.3d at 1072) ("[W]hile advocating

4    violence is protected, threatening a person with violence is not.").  "*Threats*, in whatever forum,

5    may be . . . proscribed without implicating the First Amendment." *Id.* (citing *Planned Parenthood*,

6    290 F.3d at 1076 n.11 (collecting cases)).  Although threat statutes are interpreted in light of the

7    First Amendment, the Supreme Court has "left no doubt that true threats [can] be criminalized

8    because they are not protected speech." *United States v. Hanna*, 293 F.3d 1080, 1084 (9th Cir.

9    2002) (citing *Watts v. United States*, 394 U.S. 705, 707 (1969)); *United States v. Bagdasarian*, 652

10   F.3d 1113, 1116 (9th Cir. 2011) (the First Amendment does not immunize "true threats") (citing

11   *Virginia v. Black*, 538 U.S. 343, 359 (2003)).

12   　　　　"A statement is a 'true threat' if a reasonable person would foresee that the statement would

13   be interpreted by those to whom the maker communicates the statement as a serious expression of

14   intent to harm or assault." *United States v. Stewart*, 420 F.3d 1007, 1016–17 (9th Cir. 2005)

15   (internal citation omitted); *see also Virginia v. Black*, 538 U.S. 343, 359 (2003).  A statement is a

16   "true threat" and subject to criminal liability only when the speaker subjectively intends the speech

17   as a threat. *Bagdasarian*, 652 F.3d at 1117–18; *see also Elonis v. United States*, --- U.S. ----, 135

18   S. Ct. 2001, 2012 (2015) (to convict for communicating a threat, the government must prove that

19   a defendant made a communication for the subjective purpose of issuing a threat).

20   **IV.    Analysis and Decision**

21   　　　　As an initial matter the motion seeks to dismiss the original indictment (ECF No. 5) which

22   has now been superseded.  All of the paragraphs cited in the motion are from the original

23   indictment.  However, the superseding indictment contains similar allegations with respect to

24   Santilli's alleged involvement in the offenses charged.  The court will therefore treat this motion

25   as a motion to dismiss the superseding indictment. The superseding indictment added 14 additional

26   defendants and additional charges.  The court will therefore treat the motion to dismiss the original

27   indictment as a motion to dismiss the superseding indictment to avoid future motion practice on

28   the same legal issues.

Santilli is mentioned by name in paragraphs 63, 90, 91, 92, 93, 97, 100, 102, 104, 106, 107, 108, 110, 111, and 115 in the superseding indictment.  These paragraphs generally describe the manner and means of the conspiracy, and Santilli's alleged role in the conspiracy charged in the superseding indictment.  As indicated, Santilli is charged in all 16 counts.  All 16 counts of the superseding indictment track the statutory language and comply with the pleading requirements of Rule 7(c)(1) in that they contain a plain, concise and definite written statement of the essential facts constituting the offense charged.  The superseding indictment counts contain the elements of the offenses charged and fairly inform Santilli of the charges against which he must defend himself, and enable him to plead an acquittal or conviction in bar of future prosecution.

The court must accept the allegations of the counts of the superseding indictment as true. In ruling on a pretrial motion to dismiss under Rule 12 the court does not decide whether the government can prove its case.  Santilli is not entitled to a pretrial evidentiary hearing to determine whether the government can prove its case.  The Grand Jury heard the evidence presented and found there was probable cause to charge Santilli in the original and superseding indictment. After the government closes its evidence, or after the close of all of the evidence, he may move for a judgement of acquittal on the grounds the evidence is insufficient to sustain a conviction. *See* Fed. R. Crim. P. 29.  In a motion for judgement of acquittal he may assert arguments that the government did not establish that any alleged threats were "true threats" as a matter of law, and whether any speech or conduct introduced in evidence was speech and expression protected under the First Amendment.  However, these are not issues this court may decide in a pretrial motion to dismiss.

For the reasons explained,

**IT IS RECOMMENDED** that the Santilli's Motion to Dismiss (ECF No. 703) be **DENIED.**

DATED this 6th day of January, 2017.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE